UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


CARLISA TAYLOR HICKMAN                                    PLAINTIFF

V.                              CIVIL ACTION NO. 3:24-CV-383-KHJ-MTP

CITY OF NEWTON, MISSISSIPPI, et al.                      DEFENDANTS


ORDER

Before the Court is Defendants the City of Newton and Randy Patrick's [21]

Motion for Judgment on the Pleadings. The Court grants the motion in part and

denies it in part.

I.    Background

This case arises from Defendants' decisions to demote, suspend, and then fire

Plaintiff Carlisa Taylor Hickman. And this factual recitation comes from Hickman's

[1] Complaint, its attachments, and matters properly subject to judicial notice.[1]

In October 2019, Hickman started working as a law enforcement trainee for

another city. *See* [1] ¶¶ 16–17; Miss. Code Ann. § 45-6-3(e).[2] Under Mississippi law,

---

[1] Both sides' briefing offers factual allegations that do not appear in the [1]
Complaint or its attachments. *See* Mem. Supp. Mot. [22] at 2–3; Mem. Supp. Resp. [26] at
8. The Court disregards them at this stage. Defendants' [22] Memorandum and [30] Reply
also invite the Court to "take notice" of text messages between Hickman and Patrick, as
well as an email exchange between Patrick and a training-academy official. *See* [22] at 2
n.1; [30] at 4–5, 4 n.2. But the Court may not take judicial notice of nonpublic text messages
between two parties to a lawsuit, or a Defendant's nonpublic email exchanges, in deciding a
motion for judgment on the pleadings. So the Court disregards the text messages and
emails at this stage, too. *See, e.g.*, *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d
186, 193 n.3 (5th Cir. 1988).

[2] The Court judicially notices this statute, *United States v. Schmitt*, 748 F.2d 249,
255 (5th Cir. 1984), which Defendants cite. [22] at 2; *see also* [26] at 2 n.1 (conceding that

a trainee must complete "all the selection and training requirements established by the [Board on Law Enforcement Officer Standards and Training (BLEOST)] to become a law enforcement officer . . . ." Miss. Code Ann. § 45-6-3(b), (e). Until a trainee meets those requirements, she generally cannot independently use force, carry firearms, or make arrests. *See id.* § 45-6-3(e).

Hickman started her required 12-week basic training class in January 2020. [1] ¶ 17. But the COVID-19 state of emergency disrupted the class. *Id.* So in March 2020, trainees "were sent home . . . [but] told that they would be considered certified regardless." *See id.* ¶¶ 17–19.

In early April 2020, BLEOST announced:

[BLEOST] will suspend Rule 1.1 (14) to allow Law Enforcement Trainees, who were in training academies when the state of emergency was declared and the training was disrupted, to be authorized to use force, bear arms, make arrests or exercise any powers of a peace officer without being under the direct control and supervision of a law enforcement officer, provided; their academy class had completed firearms training, driver training and mechanics of arrest training until such time as the state of emergency is lifted by the Governor of the State of Mississippi; and

FURTHER, [BLEOST] will require all trainees who were in an academy at the time of the state of emergency to complete the remainder of their training at their academy of record after the state of emergency is lifted.

FURTHER, [BLEOST] will provisionally certify any trainee who was in good academic and physical standing and set to graduate prior to their release due to the state of emergency. Upon the end of the period of the state of emergency, the officer will revert back to trainee status and be required to complete the remainder of their training with their academy of record.

---

"matters of public record [may] be considered at the [Rule] 12(c) stage without converting to summary judgment"); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

BLEOST Mins. [26-1] at 3–4.[3]

And sometime before June 2020, the training academy contacted Hickman and told her to return for a "short additional 'active shooter' training . . . ." *See* [1] ¶¶ 20–23. "At the time, [she] was in the process of switching to work for the City of Newton." *Id.* ¶ 21. "During this hiring process," Hickman "informed the Newton Chief of Police, Randy Patrick, that [she] would need to go to this active shooter training to complete her certification." *Id.* ¶ 22.

All the same, the City hired Hickman as a police officer. *See id.* ¶ 23. She started in early June 2020. *Id.* Later that month, Hickman returned to the training academy "as instructed" to complete her training. *Id.* ¶ 24. But the training academy told her that "Patrick needed to do the paperwork to 'send' her to the training." *Id.* ¶ 26. Hickman asked Patrick to complete that paperwork, but he did not. *Id.* ¶¶ 26–27.

Hickman then "repeatedly asked Patrick to let her go to the active shooter training, and he did not do so." *Id.* ¶ 28; *see also* Letter [1-3] (Hickman saying that she asked Patrick "many times in 2021"). "Patrick regularly allowed the male officers to go to classes"; "Hickman was the only female officer." [1] ¶¶ 29–30.

"In late 2021," Hickman was pregnant, and Patrick knew. *Id.* ¶ 31. And in November 2021, Governor Tate Reeves ended the COVID-19 state of emergency. Office of Governor Tate Reeves, Exec. Order No. 1,560 (Nov. 12, 2021),

---

[3] The Court judicially notices these publicly available minutes, *see Johnson v. Bowe*, 856 F. App'x 487, 492 & n.9 (5th Cir. 2021), which both sides cite. [26] at 2; [30] at 4; *see also* [1] ¶ 18 (alleging that trainees "were told that they would be considered certified").

https://www.sos.ms.gov/content/executiveorders/ExecutiveOrders/1560.pdf [https://perma.cc/CX9Y-UEQE].[4] So on November 21, 2021, *see id.*, Hickman's provisional certification lapsed, and she reverted to "trainee status." [26-1] at 3–4.

In or around December 2021, Patrick called the training academy, asking for a copy of Hickman's certification. [1] ¶ 32. The training academy responded that Hickman was not certified. *Id.* ¶ 33; *see also id.* ¶ 34 ("The reason was [that] Patrick had never let her go to the active shooter training."). The training academy added that "Hickman could still get certified, but . . . she would now need to take the entire course again because it had been so long since the original course." *Id.* ¶ 35.[5] Patrick asked Hickman if she would retake the course; Hickman said yes. *Id.* ¶ 36.

But Patrick instead went to the City's Board of Aldermen, allegedly urging that Hickman "had been 'overpaid' since she was not certified . . . ." *Id.* ¶ 37. So on January 4, 2022, the Board voted to cut Hickman's pay from $14 to $12.50 an hour. *Id.* ¶¶ 37, 42. The Board also demanded that Hickman repay $5,549.06 in funds that she had been "'overpaid.'" *Id.*[6]

---

[4] The Court judicially notices this executive order. *See Robinson v. Ardoin*, 37 F.4th 208, 216 n.1 (5th Cir. 2022) (per curiam) (judicially noticing governor's letter to legislative leadership); *see also* [26] at 3 (stating that state of emergency ended in November 2021).

[5] It is unclear why the training academy said that, given BLEOST's direction that trainees in Hickman's position would only have to "complete the remainder of their training with their academy of record." [26-1] at 4.

[6] It is unclear how the City calculated that figure. Assuming that the City sought to collect the difference of $1.50 per hour from Hickman, its demand for $5,549.06 would imply that Hickman was "'overpaid'" for about 3,700 hours of work. *See* [1] ¶¶ 37, 42 ($5,549.06 / $1.50 = 3,699.37). That is so even though Hickman allegedly was provisionally certified from June 2020 (when she started working for the City) to November 2021 (when the COVID-19 state of emergency ended). *See id.* ¶ 23; [26-1] at 3–4; Exec. Order No. 1,560, *supra.*

Sometime in January 2022—the [1] Complaint does not specify when—Hickman informally learned through social media and the local newspaper about the wage reduction and demand for repayment. *See id.* ¶¶ 41–42. She then received an official letter from the City Clerk on January 21, 2022. *Id.* ¶ 42; [1-3].

> Five days later, Hickman responded with her own letter:
>
> I asked many times in 2021 about getting my Certification and the Chief Randy Patrick kept Saying he would take care of it : Submitting the Application or Documents which can ONLY Come from ADMINISTRATION. I Don't believe that I owe the Newton Police Dep[artment] or the City of Newton any back Monies due to the fact that I REQUESTED to be Certified and the Chief DIDN'T follow up! I asked Repeatedly and NOTHING was DONE!!!
>         .       .       .
> I am Requesting to appear before the BOARD ; since I WASN'T informed that I was on the "AGENDA" at the LAST BOARD MEETING!!!

[1-3].

On February 1, 2022, Patrick placed Hickman on paid suspension "based upon the letter . . . ." Tr. [1-4] (directing Hickman to return her badge and gun). And Patrick promised to "personally put [her] on the agenda" for the Board's next meeting. *Id.*

That Board meeting occurred on February 15, 2022. [1] ¶ 45. Hickman, who was visibly pregnant, allegedly "noted that everyone sent to the training had been male." *Id.* ¶ 47; EEOC Charge [1-1] at 2. The Board "had a discussion of the people that were being sent for training," who were all men. [1-1] at 2. And Hickman's grandmother—who attended the Board meeting to "help speak up for [Hickman]"—allegedly asked, "'Why have all these guys been sent to the training and not my granddaughter?'" *Id.*

5

The Board fired Hickman on March 1, 2022. *Id.* On July 8, 2022, Hickman filed an EEOC charge, alleging sex discrimination, pregnancy discrimination, and retaliation. *Id.* at 1–3.

She then sued the City, as well as Patrick in his individual capacity. [1] ¶¶ 5–6. Her lawsuit raises an array of Title VII discrimination and retaliation claims against the City. *See id.* ¶¶ 50–54, 61–65. And it raises an array of Fourteenth Amendment discrimination and retaliation claims against both the City and Patrick. *See id.* ¶¶ 55–60, 66–71.

After answering, and soon after discovery began, Defendants moved for judgment on the pleadings. *See* [21]. The Court now takes up the motion.

## II.    Standard

"The Rule 12(c) standard is the same as that applied to Rule 12(b)(6)." *Vardeman v. City of Houston*, 55 F.4th 1045, 1049 (5th Cir. 2022). "To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Laviage v. Fite*, 47 F.4th 402, 405 (5th Cir. 2022) (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (citation modified). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

"When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead facts which, if proved, would defeat the claim of immunity." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (citation modified). "A court must carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery." *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (citation modified). But "an assertion of qualified immunity does not subject the complaint to a heightened pleading standard." *Id.* (citation modified). At the pleadings stage, "the district court [is] only to assess whether [a plaintiff's] complaint allege[s] sufficient facts to defeat qualified immunity." *Id.*[7]

Under Rule 12(c), courts "accept all facts as pleaded and construe them in the light most favorable to [the plaintiff]." *Guerra v. Castillo*, 82 F.4th 278, 282 (5th Cir. 2023) (citation modified). The Court also may consider "documents attached to the complaint" and "matters of which judicial notice may be taken," including "matters of public record." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

III.    Analysis

The Court addresses (A) Hickman's Title VII discrimination claims against the City, then (B) her Fourteenth Amendment equal-protection discrimination

---

[7] "The Supreme Court has expressly rejected the idea that it is the plaintiff's burden to 'identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established.'" *Santander*, 133 F.4th at 478 (alteration in original) (quoting *Elder v. Holloway*, 510 U.S. 510, 514 (1994)). "The operation of such a rule would be unpredictable in advance of the district court's adjudication and would 'simply release[] defendants because of shortages in counsel's or the court's legal research or briefing.'" *Id.* (alteration in original) (quoting *Elder*, 510 U.S. at 514).

claims against the City and Patrick, then (C) her Title VII retaliation claims against the City, then (D) her Fourteenth Amendment equal-protection retaliation claims against the City and Patrick, and then finally (E) her First Amendment retaliation claims against the City and Patrick.

A. Title VII Discrimination

The Court starts with Hickman's Title VII sex-discrimination claims against the City. [1] ¶¶ 50–54.

Title VII makes it unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Discrimination "because of sex" includes discrimination based on pregnancy. *Id.* § 2000e(k). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citation modified).

Hickman raises five Title VII sex-discrimination claims, challenging her (1) retroactive demotion, (2) paid suspension, (3) termination, (4) failure to receive training, and (5) hostile work environment. *See* [1] ¶¶ 50–54; [26] at 7, 12–13. The Court addresses each claim in turn.

8

1.  Retroactive Demotion

Hickman first claims that the City retroactively demoted her based on her sex. [26] at 7. That claim survives: Hickman has plausibly pleaded both ultimate elements of her claim, and the City's exhaustion defense does not appear on the face of Hickman's pleadings.

To begin, Hickman has plausibly alleged both ultimate elements.

First, Hickman has plausibly alleged an adverse employment action: retroactive demotion. [1] ¶¶ 37–42. The City's decision to cut Hickman's pay and demand more than $5,000 in repayment was an adverse employment action. *See, e.g.*, *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 218 (5th Cir. 2023) (noting that adverse employment actions include demotions and changes in compensation). The City's briefing does not argue otherwise. *See* [22]; [30] at 3.

And second, Hickman has plausibly alleged that the City retroactively demoted her because of her sex. To explain why, the Court need only address Hickman's "cat's paw" causation theory. *See* [26] at 6–7, 10–11; *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 321, 323 (5th Cir. 2016) (providing that dismissal is improper if the allegations "support relief on any possible theory" and thus declining to address alternative causation theory (citation modified)). "To invoke the cat's paw theory of causation," Hickman must plausibly allege that Patrick (1) "exhibited discriminatory animus" and (2) "possessed leverage, or exerted influence, over the titular decisionmaker." *Harville v. City of Houston*, 945 F.3d 870, 878 n.30 (5th Cir. 2019) (quoting *Roberson v. Alltel Info.*

*Servs.*, 373 F.3d 647, 653 (5th Cir. 2004)). Hickman has plausibly alleged both prongs.

Starting with the first prong, Hickman has plausibly alleged Patrick's discriminatory animus. A supervisor's disparate treatment in "choosing the employees that would receive . . . training" may indicate discriminatory animus. *See Roberson*, 373 F.3d at 653–54. "[S]uspicious timing" between a supervisor learning of a plaintiff's pregnancy and recommending an adverse employment action may reinforce that showing. *See Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 968 (5th Cir. 2016). And here, Hickman alleged:

- "Patrick regularly allowed the male officers to go to classes." [1] ¶ 29; *see also* [1-1] at 2.
- Patrick "never let [Hickman] go to the active shooter training," despite Hickman's repeated requests. [1] ¶¶ 28, 34, 40; *see also* [1-1] at 2; [1-3].
- "[E]veryone sent to the training had been male . . . ." [1] ¶ 47; *see also* [1-1] at 2. "Hickman was the only female officer." [1] ¶ 30.
- Patrick misrepresented Hickman's qualifications to the Board within months after learning that Hickman was pregnant, *see id.* ¶¶ 31, 37, 42; [26-1] at 4, even though Patrick knew years earlier that Hickman "would need to go to th[e] active shooter training to complete her certification." [1] ¶ 22.

Those allegations, which the Court must accept as true at the pleadings stage, plausibly establish Patrick's discriminatory animus.

The City's two responses are unpersuasive. For one, the City argues that Hickman improperly compares herself to male officers whom Patrick "presumably" sent for the "entire" 12-week basic training program, rather than "only one training course . . . ." [30] at 2 n.1. That response fails because nothing in the [1] Complaint supports that "presum[ed]" distinction and because, at any rate, the City fails to

10

explain why the presumed distinction makes a difference.[8] Separately, the City

argues that the "more reasonable and obvious interpretation than sex and

pregnancy discrimination" is that it is "undisputed . . . that she was not a certified

police officer and that she had represented herself as one." [22] at 8. That response

fails because Hickman disputes both points. *See* [1] ¶ 18 (alleging that trainees

"were told that they would be considered certified regardless"); [26-1] at 4 (stating

that trainees were, in fact, provisionally certified); [1] ¶ 22 (alleging that Hickman

told Patrick "[d]uring th[e] hiring process" that she "would need to go to th[e] active

shooter training to complete her certification"); *id.* ¶¶ 33–34 (alleging that Hickman

was never fully certified only "because Patrick had never let her go to the active

shooter training").[9] Again, the Court must accept those allegations as true at this

stage. So Hickman has plausibly pleaded the first prong of "cat's paw" causation.

Turning to the second prong, Hickman has plausibly alleged that Patrick had

influence over the Board. A supervisor has influence over a final decisionmaker

---

[8] In fact, that presumed distinction likely would cut in Hickman's favor at this stage. Hickman alleged that, to send officers to training, Patrick "had a simple task: to sign basic police academy paperwork . . . ." [1] at 1. Patrick allegedly did not complete the paperwork to send Hickman for "only one" ("short") training course. [30] at 2 n.1; [1] ¶ 20. If Patrick regularly completed the paperwork to send male officers for an "entire" (longer and presumably more expensive) training course, [30] at 2 n.1, that likely would support Hickman's plausible showing of discriminatory animus. Of course, if the presumed distinction does somehow support the City, the City may explain why at summary judgment.

[9] Defendants' [30] Reply submits that Patrick never knew about the BLEOST minutes—and thus never knew that Hickman had to "complete the remainder of her training *at [her] academy of record after the state of emergency [was] lifted*." [30] at 4 (first alteration in original) (quoting [26-1] at 4). But if Patrick never knew about the minutes, then he had no reason not to complete Hickman's paperwork, which Patrick allegedly knew that she needed "to complete her certification." [1] ¶ 22.

when the supervisor serves as the final decisionmaker's "primary source of information" about an employee's alleged misconduct. *See Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003); *see also, e.g.*, *Rios v. Rossotti*, 252 F.3d 375, 382 (5th Cir. 2001) ("Where [a manager's] evaluation is the sole basis or comprises a substantial basis on which the decision maker acts, the evaluation may often constitute sufficient influence . . . ."). And here, Patrick allegedly "urg[ed]" the Board that Hickman was "'overpaid' since she was not certified," and the Board allegedly accepted that representation (without consulting Hickman). *See* [1] ¶¶ 37, 41–42. Those allegations plausibly establish Patrick's influence. The City's briefing does not argue otherwise. *See* [22]; [30]. So Hickman has plausibly alleged the second prong of "cat's paw" causation, too.

Because Hickman has plausibly alleged the ultimate elements of her claim, the Court turns to the City's exhaustion defense. [30] at 1–3. "Title VII requires persons claiming discrimination to file a charge with the EEOC within 180 days after the allegedly discriminatory practice occurs." *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000). That 180-day period "begins to run from the time the complainant knows or reasonably should have known that the challenged act has occurred." *Id.* The exhaustion requirement is not jurisdictional; it is an affirmative defense. *Davis v. Fort Bend County*, 893 F.3d 300, 306–07 (5th Cir. 2018), *aff'd*, 587 U.S. 541 (2019). And at the pleadings stage, dismissal based on an affirmative defense is appropriate only if the defense appears on the face of the complaint. *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019).

At this stage, exhaustion-based dismissal is inappropriate. The City apparently argues that Hickman unofficially learned about the retroactive demotion sometime "before January 9, 2022," making her EEOC charge untimely. *See* [30] at 1–3. But the [1] Complaint does not allege whether Hickman unofficially learned of the retroactive demotion before or after January 9, 2022. [1] ¶¶ 41–42 (alleging only that Hickman "learned from the local newspaper and social media sites that [the City retroactively] demoted her" and then "was finally officially notified . . . by letter dated January 21, 2022"). Because the City's affirmative defense does not appear on the face of the [1] Complaint, dismissal is improper at this stage. *See Ironshore Eur. DAC*, 912 F.3d at 763; *Vadie*, 218 F.3d at 371.

For those reasons, Hickman's retroactive-demotion claim survives.

2.   Paid Suspension

Hickman next claims that the City put her on paid suspension based on her sex. [26] at 7. That claim survives.

The parties' only dispute is whether Hickman's paid suspension was an adverse employment action. *See* [22] at 11; [26] at 7 n.4; [30] at 3–4. The City says no, citing an unpublished case reasoning that paid suspension was not a "materially adverse event because [the plaintiff] continued to be paid during his suspension period." *Katz v. Wormuth*, No. 22-30756, 2023 WL 7001391, at *7 (5th Cir. Oct. 24, 2023) (unpublished) ("No Circuit has held that a simple paid suspension, in and of itself, constitutes an adverse employment action" (quoting *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) (per curiam))); [22] at 11 (citing

*Katz*, 2023 WL 7001391, at *7). Hickman responds that the Supreme Court's recent decision in *Muldrow v. City of St. Louis* upends that reasoning: Title VII does not impose a "significance" requirement, and it does not limit adverse employment actions to "economic or tangible" harms. 601 U.S. 346, 355 (2024) (citation modified); [26] at 7 n.4 (citing *Muldrow*, 601 U.S. at 355); *see also Hamilton v. Dallas County*, 79 F.4th 494, 506 (5th Cir. 2023) (en banc) (holding that an employee "need only show that she was discriminated against . . . with respect to . . . the 'terms, conditions, or privileges of employment'—just as the statute says").

At this stage, the Court concludes that Hickman has plausibly alleged an adverse employment action. Post-*Muldrow* and *Hamilton*, the Fifth Circuit has said that an employer "correctly concede[d]" that an employee's four-month paid suspension was an adverse employment action. *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 (5th Cir. 2024); *see also Blick v. Ann Arbor Pub. Sch. Dist.*, 105 F.4th 868, 885 (6th Cir. 2024) ("[O]ne might reasonably argue that a temporary suspension (even with pay) causes 'some harm' and also concerns a 'term or condition' of the job—all that *Muldrow* now requires under Title VII." (citation modified)); *Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643, at *4 n.3 (3d Cir. Aug. 9, 2024) (unpublished) (noting that, post-*Muldrow*, "a suspension with pay might, under some circumstances, constitute an adverse employment action"). And here, Hickman alleges that the weeks-long paid suspension presaged the end of her employment. *See* [1-4]. Although it is a close question, the Court concludes that Hickman has plausibly alleged that the weeks-long paid suspension caused her

"some harm" and affected a "condition" of her job: that she report to the workplace to complete job-related tasks. *See Muldrow*, 601 U.S. at 354–55.

Because Hickman has plausibly alleged an adverse employment action—and because the City's briefing does not address causation as to this claim, *see* [22]; [30]—Hickman's paid-suspension claim survives.

3. Termination

Hickman next claims that the City fired her based on her sex. [26] at 7. That claim survives.

Hickman has plausibly alleged both ultimate elements of her claim.

First, Hickman has plausibly alleged that she suffered an adverse employment action: termination. [1] ¶ 48; *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013).

And second, Hickman has plausibly alleged both prongs of "cat's paw" causation. As discussed above, Hickman has plausibly alleged Patrick's discriminatory animus. *See supra* pp. 10–11. And Hickman has plausibly alleged Patrick's influence over the Board. *See supra* p. 12; *see also* [1-4] (noting that Patrick "personally put [Hickman] on the agenda"); [22] at 3 (Defendants stating that the Board voted to terminate Hickman's employment because it credited Patrick's version of events: that "she falsely represented that she was a certified officer at the time of hiring").

So Hickman's termination claim survives.

4.   Failure to Train

Hickman further claims that the City failed to train her based on her sex.
[26] at 7. That claim survives: Hickman has plausibly pleaded both ultimate
elements of her claim, and the City's exhaustion defense does not appear on the face
of Hickman's pleadings.

To begin, Hickman has plausibly alleged both ultimate elements.

First, Hickman has plausibly alleged an adverse employment action: failure
to receive training that was "directly tied to [her] job duties[ and] compensation."
*Rahman v. Exxon Mobil Corp.*, 56 F.4th 1041, 1046 (5th Cir. 2023); *see also, e.g.*, [1]
¶¶ 22, 33–34, 42–48. The City's briefing does not argue otherwise. *See* [22]; [30] at
3.

And second, as discussed above, Hickman has plausibly alleged that the City
failed to train her because of her sex. *See supra* pp. 10–11.

The Court turns to the City's exhaustion defense. For now, the Court
assumes that each failure to train was a discrete act and that Hickman's last
request for training occurred in her December 2021 conversation with Patrick. *See*
[30] at 2–3 (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 280 (5th Cir. 2004)).
Even so, exhaustion-based dismissal is improper because the City's affirmative
defense does not appear on the face of the [1] Complaint. *Ironshore Eur. DAC*, 912
F.3d at 763. As above, the [1] Complaint does not allege whether Hickman
unofficially learned of Patrick's failure to send her for training before or after
January 9, 2022. *See* [1] ¶¶ 41–42 (alleging only that Patrick and Hickman

discussed going back to the academy sometime in December 2021, that Hickman

"learned from the local newspaper and social media sites that [the City instead

retroactively] demoted her," and that Hickman "was finally officially notified . . . by

letter dated January 21, 2022"). So dismissal is improper at this stage. *See*

*Ironshore Eur. DAC*, 912 F.3d at 763; *Vadie*, 218 F.3d at 371.

For those reasons, Hickman's failure-to-train claim survives.

5. Hostile Work Environment

The Court now addresses Hickman's "alternative" hostile-work-environment

claim. [26] at 12–13. Hickman "contend[s] alternatively that, if not considered part

of the adverse action analysis, the failure to send her to training and her suspension

[were] a form of harassment." *Id.* at 12. Because the Court concludes that the

failure to send Hickman for training and paid suspension were adverse employment

actions, it dismisses Hickman's "alternative harassment claim" without prejudice.

*Id.* at 13.

B. Fourteenth Amendment Discrimination

The Court turns to Hickman's Fourteenth Amendment discrimination claims

against the City and Patrick. [1] ¶¶ 55–60.

"To state a viable claim under [Section] 1983, a plaintiff must (1) allege a

violation of rights secured by the Constitution or laws of the United States and (2)

demonstrate that the alleged deprivation was committed by a person acting under

color of state law." *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 165 (5th

Cir. 2007) (citation modified).

Hickman's equal-protection discrimination claims against both Defendants parallel her Title VII discrimination claims discussed above. *See* [1] ¶¶ 55–60; [26] at 21. The Court first addresses her claims against the City, then against Patrick.

### 1. City

Hickman's equal-protection discrimination claims against the City survive, except for her hostile-work-environment claim. *See* [1] ¶¶ 55–60; [26] at 21.

At this stage, the parties' only dispute is whether Hickman has plausibly alleged violations of her rights under the Equal Protection Clause. *See* [30] at 10. "Sex discrimination . . . in public employment violate[s] the Equal Protection Clause of the Fourteenth Amendment." *Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 550 (5th Cir. 1997). And the "inquiry into intentional discrimination in employment is essentially the same . . . [under] the Equal Protection Clause of the Fourteenth Amendment . . . and Title VII . . . ." *Hopkins v. Wayside Schs.*, No. 23-50600, 2024 WL 3738478, at *12 (5th Cir. Aug. 9, 2024) (per curiam) (unpublished) (citing *Lauderdale*, 512 F.3d at 166); *see also, e.g.*, *Irby v. Sullivan*, 737 F.2d 1418, 1431 (5th Cir. 1984); *Nilsen v. City of Moss Point*, 701 F.2d 556, 559 n.3 (5th Cir. 1983) (en banc); [22] at 6 (conceding same). As above, then, the Court concludes that Hickman has plausibly alleged equal-protection discrimination claims based on her retroactive demotion, paid suspension, termination, and failure to receive training. *See supra* pp. 8–17; *Lauderdale*, 512 F.3d at 166 (reaching the same conclusion about claims under Title VII and Section 1983 after applying the same standard to both).

The City's two responses are unpersuasive. First, the City asserts that, "[a]lthough Title VII supplements and overlaps [Section] 1983, it remains an exclusive remedy when a state or local employer violates only Title VII." [30] at 10 (quoting *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). But the alleged conduct at issue—intentional sex discrimination—violates both Title VII and the Equal Protection Clause. *See Southard*, 114 F.3d at 548–50. Separately, the City objects that Hickman's equal-protection claims "merely restate the allegations presented in the related Title VII claims." [22] at 6 (citing *Espina v. City of San Antonio*, No. 5:21-CV-1176, 2024 WL 1335657, at *9–10 (W.D. Tex. Mar. 28, 2024)); *see also* [30] at 10. But Hickman may assert both a Title VII discrimination claim and an equal-protection discrimination claim "based on the same underlying facts." *Southard*, 114 F.3d at 548; *see also id.* at 549–50.[10] Hickman's [1] Complaint thus validly incorporates the same factual allegations to support her Title VII and Fourteenth Amendment discrimination claims. *See* [1] ¶¶ 50, 55.

Because Hickman has plausibly alleged violations of the Equal Protection Clause—and because the City's briefing does not address *Monell* liability at this

---

[10] *Espina* is inapposite because the complaint in that case contained "no . . . reference to an Equal Protection Clause violation . . . ." *Compare Espina v. City of San Antonio*, No. 5:21-CV-1176, 2024 WL 1335657, at *10 (W.D. Tex. Mar. 28, 2024), *with* [1] ¶ 56 ("Under the Fourteenth Amendment, it is unlawful to discriminate against an employee because of her sex . . . .").

stage, *see* [22]; [30][11]—her parallel equal-protection claims against the City survive,

except for her hostile-work-environment claim.

2.    Patrick

The Court dismisses without prejudice Hickman's equal-protection

discrimination claims against Patrick, who is entitled to qualified immunity. *See* [1]

¶¶ 55–60; [26] at 21.

"The doctrine of qualified immunity protects government officials from

liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known." *Wetherbe v. Tex. Tech Univ. Sys.*, ___ F.4th ___, No. 19-11325, 2025

WL 1442699, at *3 (5th Cir. May 20, 2025) (citation modified). "Qualified immunity

is inappropriate only where the officer had fair notice—in light of the specific

context of the case, not as a broad general proposition—that his *particular* conduct

was unlawful." *Id.* (citation modified). "A clearly established right is one that is

sufficiently clear that every reasonable official would have understood that what he

is doing violates that right." *Id.* (citation modified). And so courts cannot "define

clearly established law at a high level of generality." *Id.* (citation modified). Rather,

"[f]or a right to be clearly established, existing precedent must have placed the

statutory or constitutional question beyond debate" at the time the official acted.

*Atkins v. Hopkins*, 137 F.4th 286, 289 (5th Cir. 2025) (citation modified); *see also*

---

[11] Hickman's memorandum noted that the City did not "dispute municipal liability
under *Monell*," [26] at 17 n.5, and the City's reply failed to address that issue. *See* [30].

*Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) ("[C]learly established law comes from holdings, not dicta.").

Hickman argues that it was clearly established that the Equal Protection Clause made Patrick liable for allegedly discriminating "by refusing her training." [26] at 19 (submitting that Patrick's discriminatory failure to train "manufactur[ed the] pretext to demote, suspend[,] and fire" Hickman). Yet Hickman acknowledges that recent Fifth Circuit case law has "suggest[ed] this was not heretofore entirely settled . . . ." *Id.* at 19 n.6 (citing *Rahman*, 56 F.4th 1041).[12]

Patrick is entitled to qualified immunity: It was not clearly established beyond debate that his allegedly discriminatory failure to train Hickman violated the Equal Protection Clause. The Fifth Circuit has explained that "[n]ot every negative employment decision or event is an adverse employment action that can give rise to a discrimination . . . cause of action under [S]ection 1983." *Southard*, 114 F.3d at 555. And before 2023, the Fifth Circuit had not "clearly delineated" whether and when "an inadequate training theory can satisfy the adverse action prong of *McDonnell Douglas* . . . ." *Rahman*, 56 F.4th at 1045–46 (emphasis omitted). So the Court concludes that it was not clearly established beyond debate that Patrick could be individually liable for his *particular* alleged conduct. *See Wetherbe*, 2025 WL 1442699, at *5 (stating that official is entitled to qualified immunity unless it was "clearly established that [his] alleged . . . acts were adverse employment actions").

---

[12] For their part, Defendants assert—without elaboration—that "Hickman . . . has not satisfied the 'analogous case requirement' on any of her claims." [30] at 9; *see also* [22] at 14.

Hickman's response is unpersuasive. She submits that *Rowe v. General Motors Corp.*, 457 F.2d 348, 357 n.17 (5th Cir. 1972), placed that issue beyond debate, given its "discussi[on of] discrimination in participating in [General Motors'] management training program as proof of discrimination in promotion." *See* [26] at 7, 19 & n.6. But *Rowe* does not place the issue beyond debate. That Title VII disparate-impact case, challenging a company's system of transfer and promotion, briefly discussed training in a footnote about "disparity in employment opportunities . . . ." *Rowe*, 457 F.2d at 351, 357 & n.17. That did not provide fair notice that the Equal Protection Clause made a supervisor's allegedly discriminatory failure to train an employee unlawful. And the Court remains unaware of any then-existing "precedent [that] placed the . . . constitutional question beyond debate." *Atkins*, 137 F.4th at 289 (citation modified); *see also Rahman*, 56 F.4th at 1045 (noting that Fifth Circuit had not "clearly delineated" the issue).[13]

Because Hickman has failed to plead sufficient facts to defeat Patrick's qualified-immunity defense, and because it is unclear whether that defect is curable, the Court dismisses Hickman's claims against Patrick without prejudice. *See Waller*, 922 F.3d at 599; *Santander*, 133 F.4th at 478; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 214–15 (5th Cir. 2009).

---

[13] Hickman's other arguments are at too high a level of generality. *See* [26] at 17, 19 (arguing that "sex discrimination in government employment" and "pregnancy discrimination in employment" violate clearly established law); *Wetherbe*, 2025 WL 1442699, at *3.

C. Title VII Retaliation

The Court now takes up Hickman's Title VII retaliation claims against the City. [1] ¶¶ 61–65.

Title VII's antiretaliation provision makes it unlawful for an employer to discriminate against an employee because she "'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). To state a Title VII retaliation claim, a plaintiff must plausibly allege that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R.*, 990 F.3d 428, 433 (5th Cir. 2021).

Hickman raises two Title VII retaliation claims, claiming that (1) her letter caused her paid suspension and (2) her speech to the Board caused her termination. *See* [1] ¶¶ 61–65; [26] at 15–16. The Court addresses each claim in turn.

1. Letter

Hickman first claims that her letter was protected activity that caused her paid suspension. [26] at 15. The Court dismisses that claim with prejudice.

The Court need address only the first ultimate element: whether Hickman's letter was protected activity. *Wright*, 990 F.3d at 433. "An employee engages in protected activity when she opposes an employment practice that she reasonably believes violated Title VII." *Wallace*, 57 F.4th at 224 (citation modified). Although

23

"[m]agic words are not required," an employee must "alert [the] employer to the employee's reasonable belief that unlawful discrimination is at issue." *Id.* at 225 (citation modified). And so "a vague complaint, without any reference to [discrimination], does not constitute protected activity." *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) (citation modified).

Hickman's letter was not protected activity. Although the letter complained about Patrick's failure to send her to training, [1-3], "[t]he letter in no way suggest[ed] that discrimination was occurring . . . ." *Waters v. City of Dallas*, 540 F. App'x 257, 263 (5th Cir. 2013) (per curiam); *see also, e.g.*, *Wright v. Chevron Phillips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018) (per curiam) ("There was no suggestion that [her] concerns were related to [sex].."); *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 326–27 (5th Cir. 2017) (per curiam) (collecting cases). The letter did not mention any differential treatment or otherwise indicate that Patrick was failing to train Hickman because of her sex. *See* [1-3]. Since the letter did not alert the City to Hickman's reasonable belief that unlawful discrimination was at issue, the letter was not protected activity. *See Wallace*, 57 F.4th at 224.

So the Court dismisses Hickman's letter-based retaliation claim with prejudice.

2.  Speech to the Board

Hickman also claims that her speech to the Board was protected activity that caused her termination. [26] at 16. That claim survives.

Hickman has plausibly alleged all three ultimate elements of her claim.

First, Hickman has plausibly alleged that she engaged in protected activity. Again, "[a]n employee engages in protected activity when she opposes an employment practice that she reasonably believes violated Title VII." *Wallace*, 57 F.4th at 224 (citation modified). "[S]tating one's belief that discrimination has occurred 'virtually always' constitutes opposition . . . ." *Id.* (quoting *Crawford v. Metro. Gov't of Nash. & Davidson Cnty.*, 555 U.S. 271, 276–77 (2009)). If an employee complained about "not being afforded opportunities based on her sex, she engaged in protected activity in making these complaints." *Id.* at 225. Here, Hickman allegedly complained to the Board that she repeatedly asked Patrick to finish her training, that Patrick failed to send her for training, "that everyone sent to the training had been male," and that the differential treatment "was discrimination." [1] ¶¶ 27–30, 46–47; *see also* [1-1] at 2. And so she has plausibly alleged that she engaged in protected activity. *See Wallace*, 57 F.4th at 224–25.

Second, Hickman has plausibly alleged that she suffered an adverse employment action: termination. [1] ¶ 48; *Royal*, 736 F.3d at 400.

And third, Hickman has plausibly alleged a causal link. That is so for a few reasons. For one, the two-week period between Hickman's protected activity and termination "permits an inference of causation." *Wright*, 990 F.3d at 434; *see also Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 835 (5th Cir. 2022) ("An interval of weeks between [the plaintiff's] complaints and her termination is certainly close timing . . . ."); [1] ¶¶ 45–48; [26] at 16. Separately, Hickman alleges a sequence of

events that supports a reasonable inference of retaliation. In January 2022, the Board cut Hickman's pay and demanded repayment based on its assertion that Hickman misrepresented her qualifications; in February 2022, Hickman engaged in protected activity; and in March 2022, the Board "fired [Hickman] for the same thing it had previously just [retroactively] demoted her for." [26] at 16; *see also* [1] ¶¶ 37, 42, 45–48. And finally, Hickman alleges that the City's stated reason for her termination—that Hickman "falsely represented that she was a certified officer at the time of hiring," [22] at 3—is untrue. *See* [1] ¶¶ 22, 39; [1-1] at 2; [26] at 16. For those reasons, Hickman has plausibly alleged a causal link.

So Hickman's speech-based retaliation claim survives.

D. Fourteenth Amendment Retaliation

The Court turns to Hickman's Fourteenth Amendment equal-protection retaliation claims against the City and Patrick. *See* [1] ¶¶ 66–71; [26] at 24–26. The Court dismisses all such claims with prejudice.

Those claims all fail for the same reason: They are not cognizable under the Equal Protection Clause. To be sure, Hickman's argument to the contrary has some force; there is a circuit split on this issue. *See* [26] at 24–26, 25 n.8. But "almost all circuit courts [that have addressed the issue], as well as all district courts within the Fifth Circuit, agree that no cause of action exists for retaliation under the Equal Protection Clause of the Fourteenth Amendment." *Muslow v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 2:19-CV-11793, 2020 WL 1864876, at *21 (E.D. La. Apr. 14, 2020) (citation modified) (collecting cases); *see also Cox v.*

*Scott Cnty. Sch. Dist.*, No. 3:18-CV-677, 2021 WL 1207718, at *13 (S.D. Miss. Mar. 30, 2021) (collecting cases). And this Court does

> not read . . . *Jackson*[ *v. Birmingham Board of Education*, 544 U.S. 167 (2005),] to suggest that every statute prohibiting discrimination—much less the Constitution's aged guarantee of equal protection—also necessarily incorporates a right to be free from retaliation for reporting discrimination. . . . The better understanding is that *Jackson* and cases like it turned on the text and history of the statutes being interpreted—neither of which they share with the Equal Protection Clause.
>
> .        .        .
>
> . . . It does not follow that because discrimination sometimes includes retaliation in other contexts, the Equal Protection Clause must have the same remedial scope. [The Court] decline[s] to break new constitutional ground based on the interpretation of statutes with different histories, different structures, and different text than the Fourteenth Amendment.

*Wilcox v. Lyons*, 970 F.3d 452, 463–64 (4th Cir. 2020).[14] Hickman's equal-protection retaliation claims all fail on that basis.

And the equal-protection retaliation claims against Patrick fail for a second reason: He is entitled to qualified immunity. [26] at 25–26 (Hickman conceding that, "as to a specifically Equal Protection Clause claim of retaliation by Patrick individually[,] the law is not well established").

The Court thus dismisses with prejudice Hickman's Fourteenth Amendment equal-protection retaliation claims against the City and Patrick.

---

[14] Hickman also relies on *Goff v. Continental Oil Co.*, which the Fifth Circuit overruled. *See* [26] at 24–25 (citing *Goff v. Cont'l Oil Co.*, 678 F.2d 593, 598 (5th Cir. 1982), *overruled by*, *Carter v. S. Cent. Bell*, 912 F.2d 832, 840 (5th Cir. 1990)); *see also Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 339 (5th Cir. 2003) (noting that *Carter* was then superseded by Civil Rights Act of 1991).

E.  First Amendment Retaliation

Finally, the Court addresses Hickman's First Amendment retaliation claims against the City and Patrick. *Id.* at 22. The Court dismisses all such claims without prejudice.

Those claims all fail for the same reason: They do not appear in Hickman's [1] Complaint. "A properly pleaded complaint must give fair notice of what the claim is . . . ." *Sims v. City of Madisonville*, 894 F.3d 632, 643 (5th Cir. 2018) (per curiam) (citation modified). While Hickman argues that Count IV encompasses both an "Equal Protection Clause claim of retaliation" and a "First Amendment retaliation claim," [26] at 22, 25–26, her [1] Complaint nowhere mentions the First Amendment, references the elements of a First Amendment retaliation claim, or otherwise puts Defendants on fair notice of such a claim. *See, e.g.*, [1] ¶¶ 66–71 ("Retaliation Under the Fourteenth Amendment"); *id.* ¶ 67 ("Under the Fourteenth Amendment, it is unlawful to retaliate against an employee because of her opposition to discrimination.").

So the Court dismisses without prejudice Hickman's "Fourteenth Amendment incorporation of the First Amendment" claims against the City and Patrick. *See* [26] at 22; *Sims*, 894 F.3d at 643.

IV.   Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS IN PART and

DENIES IN PART Defendants the City of Newton and Randy Patrick's [21] Motion

for Judgment on the Pleadings. In summary:

- Hickman's Title VII discrimination claims against the City based on her retroactive demotion, paid suspension, termination, and failure to receive training survive. The Court dismisses without prejudice Hickman's alternative hostile-work-environment claim.
- Hickman's Fourteenth Amendment equal-protection discrimination claims against the City based on her retroactive demotion, paid suspension, termination, and failure to receive training survive. The Court dismisses without prejudice Hickman's alternative hostile-work-environment claim.
- The Court dismisses without prejudice Hickman's Fourteenth Amendment equal-protection discrimination claims against Patrick.
- Hickman's Title VII retaliation claim against the City regarding her speech to the Board survives. The Court dismisses with prejudice Hickman's Title VII retaliation claim against the City regarding her letter.
- The Court dismisses with prejudice Hickman's Fourteenth Amendment equal-protection retaliation claims against the City and Patrick.
- The Court dismisses without prejudice Hickman's First Amendment retaliation claims against the City and Patrick.

Hickman's counsel shall contact the Magistrate Judge in line with the [23] Order.

SO ORDERED, this 17th day of June, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE